# Steiner's Appeal—In the Matter of the Sequestration of the Youghiogheny Navigation Company.

Moneys received by a sequestrator of an incorporated company are to be distributed amongst its creditors according to the rules established in the case of the insolvency of an individual.

Judgments or mortgages binding the property of a corporation must first be paid.  But neither the tolls nor the real estate necessary for the enjoyment of the corporate franchises is bound by such judgments or mortgages, unless they were given in pursuance of special authority from the legislature.

Where a company was authorized by Act of Assembly to mortgage their property for the completion of the improvement, so as not to invalidate debts existing before the execution of the mortgage or contracted in the prosecution

[Steiner's Appeal.]

of the work, a claim for damages occasioned by the damming back of water by such improvement after the execution of the mortgage is postponed to the mortgage.

The legislature may authorize a company to mortgage its property, and direct the relation that the lien of the mortgage shall bear to the other liabilities of the company.

APPEAL from the decree of the Common Pleas of *Westmoreland county*.

The Youghiogheny Navigation Company was chartered by the legislature in 1844, for the improvement of the navigation of that river by the erection of locks and dams. By the Act of 1849, the company was made liable for injuries to private property in the same manner as the Monongahela Navigation Company by the Act of 1848. John Steiner, the appellant, owned a tract of land upon the Big Sewickly, and had erected a grist and saw mill upon that creek, some 200 or 300 yards from the river. In 1850 the company procured an act authorizing a mortgage or mortgages upon their improvements with the appurtenances, and all the tolls, profits, receipts, and resources thereof, together with any other real and personal estate of which they may be seised or possessed, on such terms as they might deem proper, for the purpose of securing any existing debt of the company, or any which might thereafter be contracted in the prosecution or completion of their works. Under this act the company executed a mortgage on the 3d July, 1850, for $14,000 to William Larimer, Jr., and on the same day another to the Bank of Pittsburgh for $6000, for which Larimer was responsible, and which he afterwards paid and had assigned to him.

Upon the completion of the work, it was found that in consequence of it, the water was flooded back up the Big Sewickly, so as to injure the mill of Steiner and overflow 20 acres of his land. Being unable to agree with the company upon the amount of damages to which he was entitled, the difficulty was referred to arbitration, and the sum due him fixed at $1050, on the 11th November, 1851. This became a judgment, and execution having issued thereon, the effects and property of the company were sequestered for the benefit of creditors. The fund for distribution after the payment of costs was given by the auditor to William Larimer's mortgage. The report of the auditor was confirmed by the court over the following exception :—

"1st September, 1855. Auditor erred in appropriating fund in sequestrator's hands to the mortgage of William Larimer, which should have been allowed to Steiner on his judgment, on award."

The decree of the court confirming the report was the error assigned.

[Steiner's Appeal.]

*Cowan*, for appellant.—The mortgagee by the Act of 1850 was put in the position of preferred stockholders. The company became a trustee for the mortgagee, and after paying prior debts and expenses of the trust, the surplus was to be paid on account of the claim secured by the mortgage. The judgment of appellant was part of these expenses. Appellant had a right under the constitution to compensation for the injury done him. The relation existing between the company and the landowner is one of contract; for. the charter of every corporation is a contract by the state for the public with the company. He to whose land an injury is done by a company is a creditor from necessity, and ought not to be postponed to a stockholder, or one who stands in that position.

*Clarke* and *Markle*, for appellees.—The taking of property by the company does not raise a contract relation. A corporation is subrogated to the state's rights of eminent domain, and compensation is left to the mode prescribed by the state, subject to the constitutional injunction. No right to recover consequential damages exists, and a charter is constitutional, though no provision be made: Reitenbaugh *v.* Chester Valley Railroad Company, 9 *Harris* 105; Monongahela Navigation Company *v.* Coon, 6 *Barr* 379; 6 *W. & S.* 101. The Monongahela Navigation Company were not liable for consequential damages until the Act of 1848, the provisions of which act were extended to Youghiogheny Navigation Company by Act of 1849. But for this act Steiner could have no remedy. He was not a creditor by contract previous to execution of the mortgage—his claim for damages did not arise until a year afterwards. Larimer did not stand in the position of a stockholder, for the object of the Act of 1850 was to secure the money to be advanced by Larimer for the completion of the improvement.

The opinion of the court was delivered by

Knox, J.—Moneys received by a sequestrator of an incorporated company are to be distributed amongst all the creditors of the corporation according to the rules established in the case of the insolvency of individuals.

The 27th section of the Act of 16th June, 1836, relating to insolvents, provides that "all *bona fide* mortgages, judgments, and executions, binding the real or personal estate of an insolvent, shall remain good and effectual in law, and shall be first satisfied out of the debtor's estate according to their priority of lien."

Where the property sequestered is bound by the lien of judgments or mortgages, such liens are to be first paid out of the funds in the hands of the sequestrator. Neither the tolls, nor such real estate as is necessary for the enjoyment of the corporate

franchises, are bound by the lien of judgments or mortgages given by a corporation, without being specially authorized by Act of Assembly. But the legislature may lawfully give authority to a company to mortgage all its estate, real and personal, including its franchises, and may direct the relation that the lien of the mortgage shall bear to the other liabilities of the corporation. The Act of the 19th April, 1850, authorized the Youghiogheny Navigation Company, whenever it was deemed expedient by the company, in order to secure the completion of its improvements, to execute a mortgage or mortgages of the same with its appurtenances, and all the tolls, profits, receipts, and resources thereof, on such terms as it might deem proper for the purpose of securing any existing debt of the company, or any which might thereafter be contracted in the prosecution or completion of its works. Debts contracted prior to the execution of the mortgage were not to be affected by the authority to mortgage. In pursuance of the Act of Assembly, a mortgage for $14,000 was executed by the company to Wm. Larimer, Jr., to secure him for completing the work of the company, and also for advances made and to be made upon the contracts of the company; and one on the same day to the Bank of Pittsburgh, for six thousand dollars, to secure a debt for that amount due by the company to the bank. These mortgages covered everything mentioned in the act, viz.: "All the improvement of the said Youghiogheny Navigation Company, comprising the locks and dams belonging thereto, with their appurtenances, and all the tolls, profits, receipts, and revenue arising therefrom."

John Steiner, the appellant, alleged that by reason of the erection of Dam No. 2 his mill and lands, situate on the waters of the Big Sewickly, were overflown by the setting back of the waters of the Youghiogheny. On the 30th of September, 1851, by consent, certain persons were appointed to assess the damages (if any), and on the 11th of November, 1851, the appraisers or viewers assessed the damages at $1050, which assessment was on the 13th November, 1851, filed in the Court of Common Pleas of Westmoreland county, and judgment entered thereon.

This claim did not arise under a contract of the company made before the date of the mortgages. Nor was it for property taken by the right of eminent domain: but it was simply for damages occasioned by an obstruction legally placed in the Youghiogheny river, by the navigation company, subject, however, to its liability for any injury sustained in consequence of the obstruction, as provided for in the Act of 15th March, 1849. But even for property taken under the right of eminent domain, the owner may waive his constitutional right to payment or security in advance, and when this is done, the claim has no priority over other liabilities of the corporation.

[Steiner's Appeal.]

To say that the mortgages should be postponed to damages occasioned by the completion of the work, because the money furnished by the mortgagees tended indirectly to the injury, would be substantially to hold the lender of money liable for the use made of it by the borrower. And, besides, it would be in effect adding to the mortgage a disabling provision not to be found either in the Act of Assembly, or in the contract of the parties. It might have been the part of wisdom for the legislature to have protected claims for damages, as it did those arising under previous contracts; but as it was not done by legislative action, it cannot be by judicial construction.

We are of opinion that the appellees' mortgages were the first liens upon the property sequestered, and were therefore entitled to priority in the distribution of the moneys received by the sequestrator.

Decree affirmed at the costs of the appellant.